The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* OFFICE FRANÇAIS DU TOURISME (NO. 3721)[1]

---

[1] T. D. 46881.

United States Court of Customs and Patent Appeals, January 22, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Richard E. FitzGibbon* and *John F. Kavanagh*, special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument December 15, 1933, by Mr. Kavanagh and Mr. Isenschmid ]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The record in this appeal contains no testimony and the parties entered into the following stipulation:

It is stipulated and agreed between counsel, in the matter of the above protests; that the merchandise on the invoices which was assessed with duty at 15% under paragraph 1410, Tariff Act of 1930, as printed matter of bona fide foreign author-ship, or at 25% under the same paragraph as printed matter not specially provided for, consists of folders, pamphlets, books, and circulars containing literary and descriptive matter concerning, and pictorial representations of, the various sec-tions, cities, towns, hotels, and scenery in France.

That all of said articles were sent by the Office National du Tourisme, of Paris, France, to the Office Français du Tourisme, in New York City, and that both of said offices are official bureaus of the Ministry of Public Works of the Government of the Republic of France, as shown by the letter hereto attached and marked "Exhibit A."

That said letter marked "Exhibit A" may be received in evidence, and made a part of the records of the above protests.

That the articles in question were not printed by or purchased by the National Government of France, but were received by it from various sources, and issued by it for the benefit and information of the traveling public.

That the National Government of France, acting through the Office National du Tourisme, sent said articles to the said Office Français du Tourisme, in New York City, for gratuitous distribution to the public to promote interest in travel in France.

That said articles were distributed free of charge in the United States by said Office Français du Tourisme.

The collector classified a portion of the imported merchandise involved in this appeal, and assessed it with duty at 15 per centum ad valorem under paragraph 1410, Tariff Act of 1930, as printed matter of bona fide foreign authorship, and a portion of it as printed matter not specially provided for, at 25 per centum ad valorem under the same paragraph.

Plaintiff below, appellee here, protested the said classification and assessment of duty and claimed the merchandise to be free under the provisions of paragraph 1629, Tariff Act of 1930, for "public documents issued by foreign Governments."

Paragraph 1629 is as follows:

PAR. 1629. Hydrographic charts and publications issued for their subscribers or exchanges by scientific or literary associations or academies, and publications of individuals for gratuitous private circulation, not advertising matter, *and public documents issued by foreign Governments*; books, maps, music, engravings, photographs, etchings, lithographic prints, bound or unbound, and charts, which have been printed more than twenty years at the time of importation: *Provided*, That where any such books have been rebound wholly or in part in leather within such period, the binding so placed upon such books shall be dutiable as provided in paragraph 1410. (First italics ours.)

Paragraph 1629 of the Tariff Act of 1930 is identical with paragraph 1528, the predecessor paragraph in the Tariff Act of 1922.

The United States Customs Court, under the authority of *J. A. Michon* v. *United States*, Abstract 17754, 60 Treas. Dec. 1356, and cases cited therein, held the merchandise classifiable as public documents issued by a foreign government, and sustained the importer's protest. From the judgment of the trial court the Government has appealed here, the sole question in the case being: Under the stipulation, does the merchandise fall within the quoted provision "public documents issued by foreign Governments" for tariff-duty purposes?

Webster's New International Dictionary (1932) defines the word "public" as follows:

public. 1. Of or pertaining to the people; relating to, or affecting, a nation, state, or community at large;—opposed to *private*; as, the *public* treasury, credit, good; *public* opinion, etc. * * *.

The word "document" is defined in the same authority as—

document. 3. An original or official paper relied upon as the basis, proof, or support of anything else;—in its most extended sense, including any writing, book,

or other instrument conveying information; any material substance having on it a representation of the thoughts of men by means of any species of conventional mark or symbol.

The definition of the word "issue" in said dictionary is—

issue. v. t. 1. To cause to issue; to send or let out; to emit; discharge. 2. To deliver, or give out, as for use; as, to *issue* provisions. * * * 4. To send out officially; to deliver by authority; to publish or utter; to put into circulation; to emit; as, to *issue* an order; to *issue* a writ; to *issue* notes.

issue. v. i.; issued; * * * 7. to be given or sent out officially or publicly; * * *.

The term "Public Documents" is defined in Bouvier's Law Dictionary (Rawles' Third Revision) as follows:

Public Documents. The publications printed by order of Congress or either house thereof. McCall v. U.S., 1 Dak. 328, 46 N.W. 608. In an action involving a title to swamp lands the official correspondence and reports of public officers of the United States relating to swamp lands and published by the authority of the legislature are public documents which the court may consult even if not made formal proof in the case; Kirby v. Lewis, 39 Fed. 66.

The term was considered in 5 App. Cas. H.L. 643, not to be taken in the sense of the whole world. The books of a manor are public in the sense that they concern all the world interested in the manor. So of entries in a corporation book of a corporate matter. But it must be a public document and the entry must be made by a public officer and so that all persons concerned may have access to it afterwards.

In many of the states tax returns are made by law public documents and open to inspection; *Flint* v. *Stone Tracy Co.*, 220 U.S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

From Corpus Juris, volume 50, at page 853, we quote the following:

29. Public Document. An instrument or record concerning the business of the people at large, preserved in, or emanating from, any department of government; a document that is made by a public officer for the purpose of the public making use of it, and being able to refer to it; a publication printed or issued by order of one or both houses of Congress or of a state legislature; also, an instrument authenticated by a notary public or a competent public official, with the formalities required by law.

Black's Law Dictionary (third edition) defines "public document" as follows:

Public document. A state paper, or other instrument of public importance or interest, issued or published by authority of Congress or a state legislature. Also any document or record, evidencing or connected with the public business or the administration of public affairs, preserved in or issued by any department of the Government. See *Hammatt* v. *Emerson*, 27 Me. 335, 46 Am. Dec. 598. One of the publications printed by order of Congress or either house thereof. *McCall* v. *U.S.*, 1 Dak. 328, 46 N.W. 608. Broadly, any document open to public inspection. *Flint* v. *Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas. 1912B, 1312.

The Government argues that the imported printed articles are not public documents issued by a foreign government because they did not originate by virtue of any governmental authority or from the act

of any public official. The Government's contention seems to be to the effect that a document to fall within this provision must be so authenticated by a foreign government that it would be regarded in evidence in a trial of an issue as proof of the facts contained, and that the imported material consists of nothing more than advertising matter not produced by the Government.

The appellee, in support of its protest claim and the decision of the court below, argues that under the definitions of the terms "issued", "public", "document", and "public documents" in the dictionaries and legal authorities, the imported merchandise clearly responds to the meaning and intent of the said free-list provision, inasmuch as the documents are open to public inspection, are distributed free of charge in the United States and are issued (sent out) by a foreign government. Importer further argues for legislative adoption of judicial interpretation and determination, and states that—

Therefore, it having been held, under the prior tariff acts of 1909 and 1922, that such publications were classifiable under the provision in said acts for "public documents issued by foreign Governments," it will be presumed that the Congress, when it enacted the Tariff Act of 1930, was cognizant of those decisions, and adopted and approved them when it reenacted the provision in precisely the same language in paragraph 1629 of that act.

Appellee cites Abstract 17754, *supra*, and the cases cited therein, relied upon by the court below.

In view of appellee's contention for the application of the rule of legislative adoption of judicial interpretation, it is necessary to examine the said authorities cited and relied upon with considerable care.

Abstract 17754, *supra*, is short and is quoted in full:

The appraiser described the merchandise as printed advertising matter *comprising pamphlets, folders, photographs, post cards, and lithographic posters.* The post cards were classified at 30 per cent ad valorem under paragraph 1310, tariff act of 1922, the lithographic posters at 25 cents a pound under paragraph 1306, and the remainder of the merchandise at 25 per cent ad valorem under paragraph 1310 as printed matter. A claim for free entry is made under paragraph 1528 providing for *public documents* issued by foreign governments. (Italics ours.)

Opinion by FISCHER, P.J. It was shown that the articles in question are *public documents* containing literary and descriptive matter which were sent by the National Government of France to its agent in New York City to promote travel to that country. On the authority of Abstracts 15727 and 30287 the merchandise assessed at 25 cents per pound under paragraph 1306 and at 30 cents per pound under 1310 was held entitled to free entry under paragraph 1528. The protest was sustained in part. (Italics ours.)

It will be noticed that the merchandise referred to in the abstract would seem to be comparable in some respects to that which is at bar. Unlike the case at bar, there is no showing in the abstract that the printed advertising matter was not printed and produced by the

French Government. In the case at bar, the stipulation definitely states that the articles in question are not printed by the National Government of France but are received by it from various sources. This abstract cited Abstract 15727 and Abstract 30287, which are those relied upon in appellee's brief.

Abstract 15727, 59 Treas. Dec. 1648, is also short and follows:

Pamphlets containing literary and descriptive matter and pictorial representations concerning the various sections, cities, towns, and scenery in Germany traversed by the railways of the German Federal Railroad, issued for the benefit and information of the traveling public, classified at 25 per cent ad valorem under paragraph 1310, tariff act of 1922, are claimed dutiable as of bona fide foreign authorship at only 15 per cent under the same paragraph, or entitled to free entry as public documents issued by foreign Governments under paragraph 1528.

Opinion by FISCHER, P.J. It was established that the author of the publications is a German citizen and Government official and that the German Federal Railroad is owned and operated by the German Government. On the authority of Abstract 30287 they were held entitled to free entry under paragraph 1528 as claimed.

It will be noted there that the court expressly found that the author of the publications was a German citizen and Government official and that the German Federal Railroad was owned and operated by the German Government. It is obvious that these facts differ in a very material respect from the facts at bar.

Abstract 30287, 23 Treas. Dec. 312, is as follows:

Books issued by the Austrian Government for the purpose of informing the traveling public as to the cities, towns, and scenery along the Imperial Royal State Railways owned and operated by it, classified under paragraph 416, tariff act of 1909, were held free of duty under paragraph 517 as "public documents issued by foreign governments."

There is nothing in the statement of facts there to negative the authorship being that of the Austrian Government and it will be noted that the imported documents advertised scenery along the Royal State Railways owned and operated by the Austrian Government.

It is our view that under circumstances such as are above shown, the doctrine of legislative adoption of judicial interpretation cannot and should not apply or be given controlling influence. It will be noted that a portion of the paragraph is directed against the free admission of advertising matter. The bar against advertising matter is not made to apply to the public-document provision, and we think that Congress failed to expressly so provide for the reason that advertising matter which did not fall within the common meaning of public documents could not be admitted under the free list even though the term "not advertising matter" was omitted. If the record before us showed that the printed articles gave out information and incidentally

352

advertised or made known the places, or features of the places, referred to in the printed matter and were the production of the French Government, we would be confronted with a question not now before us.

We do not think Congress, by the word "issued" intended that a private individual or firm in France could hand its advertising matter to the French Government and have it pass it on to the people of America as a public document issued by the French Government. The mere fact that the French Government sent it to their agent in New York after having received it from the parties interested in the advertisement, in our judgment, does not make it the publication of the French Government, nor do we believe that it is to be regarded as "issued" by the French Government. To accept the contentions of the appellee would be to sanction the admission free of duty into the United States of any kind of advertising matter, to which the public here might have free access, which the private concerns of France might induce their Government to send to this country. We do not think this was the legislative intent.

Under the issues of this case we do not regard it as necessary for us to pass upon the question as to whether or not printed matter of the character as is at bar, if printed, published and sent out by the French Government, merely advertising places or things in France, would fall within the free-list provision. On this question we express no opinion.

The judgment of the United States Customs Court is *reversed.*